AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 24 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  **19MJ4668** |
| GPS Tracking Device with SIM Card number 8952020018/H6/611297278F | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached Affidavit of Special Agent Roberto Rospigliosi

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Roberto Rospigliosi, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/24/19

_____
*Judge's signature*

City and state: San Diego, CA       Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Roberto Rospigliosi, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

**INTRODUCTION**

1. This affidavit is made in support of an application for a warrant to search a GPS Tracking Device with SIM Card number 8952020018/H6/ 611297278F, as described in Attachment A (the **Target Device**), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952 and 960 as more particularly described in Attachment B. This search supports an investigation and prosecution of Miguel PAREDES-Garcia, who is charged with committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was found attached to a 2003 Ford Explorer that PAREDES drove into the San Ysidro Port of Entry in San Diego, California on February 20, 2019. The **Target Device** is currently stored as evidence at the HSI evidence vault at 2297 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or

1

other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

**EXPERIENCE AND TRAINING**

5. I am a Special Agent with HSI and have been so employed since November 2010. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to a Document and Benefit Fraud Task Force in San Diego, California. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

6. Through training and experience, I have become familiar with narcotics trafficking techniques and the means used by narcotics traffickers to store and retrieve information pertinent to their criminal activities. Based on my training and experience, as well as my consultations with other law enforcement personnel, I have learned that drug traffickers commonly use electronic devices such as cellular telephones, computers, and GPS devices to store names, telephone numbers, records, drug ledgers, location data, and other information pertaining to drug trafficking activity.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations; and

c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

8. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on electronic devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data, personal security keys, and IP addresses. Much of the evidence generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

9. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, I have learned based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

a. Tending to indicate efforts to import methamphetamine, fentanyl, or other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine, fentanyl, or other federally controlled substances within the United States;

b. Tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, fentanyl, or other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine, fentanyl, or other federally controlled substances within the United States;

c. Tending to identify travel to or presence at locations involved in the importation of methamphetamine, fentanyl, or other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine, fentanyl, or other federally controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

d. Tending to identify the user of, or persons with control over or access to, the GPS device.

10. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I have learned that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On February 20, 2019 at approximately 11:30 a.m., Miguel PAREDES-Garcia applied for entry into the United States at the San Ysidro, CA

4

Port of Entry (POE) as the driver, sole occupant, and registered owner of a 2003 Ford Explorer.

11. While assigned to primary lanes, Customs and Border Protection Officer (CBPO) Park received a negative oral Customs Declaration from PAREDES. CBPO Park received a computer-generated alert for the vehicle and referred it to vehicle secondary for inspection. In secondary, CBPO Alves screened the vehicle using the Z-Portal X-Ray and noticed anomalies in the dashboard area of the vehicle.

12. Also in secondary inspection, CBPO Ramon utilized his Human and Narcotics Detection Dog (HNDD) to screen the vehicle. CBPO Ramon's HNDD alerted to the dashboard area of the vehicle.

13. CBPO S. Mackey then inspected the vehicle and removed the dashboard, revealing seven (7) packages wrapped in brown plastic and four (4) packages wrapped in clear plastic. One package wrapped in brown plastic was probed and field-tested positive for fentanyl. One package wrapped in clear plastic was probed and field-tested positive for methamphetamine. A total of seven (7) packages were removed from the vehicle's dashboard, with a total weight of approximately 7.52 kilograms (16.54 pounds) of fentanyl. A total of four (4) packages were removed from the vehicle's dashboard, with a total weight of approximately 1.84 kilograms (4.04 pounds) of methamphetamine. PAREDES was placed under arrest for violation of Title 21, United States Code, Sections 952 and 960, Importation of a Controlled Substance.

14. The **Target Device** was discovered in the 2003 Ford Explorer on February 20, 2019 during an inspection by the United States' vehicle expert witness. A defense investigator was also present.

15. During his post-arrest interview, PAREDES agreed to waive his *Miranda* rights and speak to SAs Rospigliosi and Vazzana. PAREDES stated he had no knowledge of the narcotics being in his vehicle.

16. Based upon my experience and investigation in this case, I believe that PAREDES, as well as other persons as yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe PAREDES and others used the **Target Device** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-trafficking activities.

17. I have learned that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as PAREDES will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. I respectfully request permission to search **Target Device** for data beginning on November 20, 2018, up to and including February 20, 2019.

## METHODOLOGY

18. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini-computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that PAREDES used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because **Target Device** was seized immediately inside the vehicle during the investigation of PAREDES's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by PAREDES, as described in Attachment B, continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from November 20, 2018, through February 20, 2019.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Roberto Rospigliosi
HSI Special Agent

Subscribed and sworn to before me this 24th day of October, 2019.

_____
KAREN S. CRAWFORD
United States Magistrate Judge

8